### UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF KENTUCKY
### FRANKFORT DIVISION

IN RE

JASON WHITAKER                                          CASE NO. 18-30073
DEBTOR

PAUL A. RANDOLPH, *ACTING UNITED*                              PLAINTIFF
*STATES TRUSTEE*
                                                      ADV. NO. 19-03002
v.
                                                          DEFENDANT
JASON WHITAKER

### MEMORANDUM OPINION AND ORDER

The Plaintiff ("United States Trustee"), and the Defendant, Jason Whitaker ("Whitaker"),

filed cross-motions for summary judgment that are denied for the reasons set out herein. [ECF

Nos. 16 and 17.]

I.    BACKGROUND.

Whitaker was a self-employed contractor who did business as Jason Whitaker Concrete

and Construction.  [Case No. 18-30073, ECF No. 1 at 4.]   Whitaker started building houses in

early 2013 after ten years doing concrete work.  [ECF No. 16-1 ("Whitaker First Affidavit") ¶ 4.]

He built two or three houses in 2014 and eight houses in 2015.  [*Id.* ¶ 12.]  The expansion

continued into 2016, but Whitaker testified he grew too rapidly and was forced to cease

operations in May 2017.  [*See* Whitaker First Affidavit ¶¶ 14-16; ECF No. 1 ¶ 9.]  He filed his

chapter 7 petition nine months later.  [Case No. 18-30073, ECF No. 1.]

The parties agree Whitaker deposited approximately $7.2 million into three bank

accounts from February 2015 through May 2017:

1

| Year | Whitaker's Deposits |
|------|---------------------|
| 2015 | $2,033,220.51 |
| 2016 | $3,499,018.94 |
| 2017 | $1,664,246.84 |
| **Total** | **$7,196,486.29** |

[*See* ECF Nos. 38, 23-7 at 31.]

The United States Trustee focuses on two groups of distributions from these accounts for summary judgment purposes.  Whitaker withdrew approximately $170,000.00[1] in cash [ECF No. 28 at 3; *see also* ECF No. 23-8 at 43]  and wrote checks approaching $250,000.00[2] payable to a convenience store called Cowboys.  [ECF No. 28 at 3; *see also* ECF No. 23-9 at 32.]  Whitaker suggests that $50,000.00 of the cash withdrawals relate to expenses while traveling and payment of his wages.  [ECF No. 23-6 at 1 and 3.]   Also, he claims $21,000.00 of the checks were written to Cowboys for fuel.  [ECF No. 23-9 at 30.]  He further asserts that he used approximately $100,000.00 to pay employees.

Whitaker's schedules list assets of $218,986.12, made up of fully encumbered real property, a claim for recovery of gifts to an ex-girlfriend, and de minimis personal property.  [Case No. 18-30073, ECF No. 1 at 8.]  Liabilities on the schedules exceed $2,300,000.00 [*id.*] and proofs of claims filed to date exceed $1,900,000.00.  Whitaker alleges the total of the claims filed is substantially lower because at least one large claim was filed twice and several claims include a request for punitive damages.  Whitaker conceded at oral argument the filed claims are still material.

Whitaker faced at least nine felony indictments related to his construction work when he filed his petition.  [Case No. 18-30073, ECF No. 30.]  Whitaker pleaded guilty in one of the

---

[1] Approximately $60,000.00 in 2015, $75,000.00 in 2016, and $35,000.00 in Jan-May 2017.  [ECF No. 23-8 at 43.]
[2] Approximately $4,000.00 in 2015, $130,000.00 in 2016, and $115,000.00 in Jan-May 2017.  [ECF No. 23-9 at 1.]

criminal cases in June 2018, but the remaining cases continued.  [Case No. 18-30073, ECF

No. 57.]  Whitaker used the ongoing criminal prosecution to justify his refusal to answer any

questions at a Rule 2004 examination conducted by the United States Trustee in December 2018.

[ECF NO. 17-6.]  Whitaker pleaded guilty in the pending criminal cases in March 2019.  [Case

No. 18-30073, ECF No. 93.]

The United States Trustee requested job-related information, including contracts, a

general ledger, job-based expenses, and other financial information for the Rule 2004

examination.  Whitaker did not produce this information, nor did he provide other common

business and personal records (*e.g.*, a tax return from 2017, balance sheets, and income

statements).  [ECF No. 1 ¶ 19.]  Whitaker only provided bank statements and related cancelled

checks and deposit information for the three years preceding his filing.  Whitaker argued then

and argues now that he did not need to keep all records requested by the United State Trustee.

[Whitaker First Affidavit ¶¶ 6-10, 17-21.]

The United States Trustee believes the failure to explain the use of $415,000.00 over 28

months and the lack of records justifies denial of discharge pursuant to 11 U.S.C. § 727(a)(3)

and (5).  Whitaker does not believe the United States Trustee has satisfied the burden to prove

the information and records are required to explain his business or the loss of assets.  Whitaker

also claims he has additional records that support his position.

## II.    JURISDICTION AND SUMMARY JUDGMENT STANDARD.

Jurisdiction over this adversary proceeding is proper.  28 U.S.C. § 1334(b).  Venue is

proper in this District.  28 U.S.C. § 1409.  This matter is also a core proceeding and entry of a

final judgment is proper.  28 U.S.C. § 157(b)(2)(J).

After discovery closed, the parties filed cross-motions for summary judgment. "When courts review cross-motions for summary judgment, they 'must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party.'" *Higgason v. Vanderbilt Mortg. & Fin., Inc. (In re Pierce)*, Case No. 10-61119, Adv. No. 11-6008, 2011 Bankr. LEXIS 3639, at *6 (Bankr. E.D. Ky. Sept. 21, 2011) (quoting *Appoloni v United States,* 450 F.3d 185, 189 (6th Cir. 2006)). Summary judgment is only proper if there is no genuine dispute of material fact and the moving party is entitled to judgment. FED. R. CIV. P. 56(a), made applicable by FED. R. BANKR. P. 7056.

The parties have briefed their requests and a hearing was held on June 11, 2019. The matter is ready for a decision.

## III.   ANALYSIS.

### A.  11 U.S.C. § 727(a)(3):  Failure to Keep or Preserve Records.

#### 1.   The Moving Party Must Prove the Need for Records.

Section 727(a)(3) provides that a court shall grant a discharge unless:

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

11  U.S.C. § 723(a)(3).

Creditors are entitled to "enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present." *Turoczy Bonding Co. v. Strbac (In re Strbac)*, 235 B.R. 880, 882 (B.A.P. 6th Cir. 1999)). The required compliance "removes the risk to creditors of 'the withholding or concealment of assets by the bankrupt.'" *Caneva v. Sun Communities Operating Ltd. P'ship (In*

4

*re Caneva*), 550 F.3d 755, 761 (9th Cir. 2008) (quoting *Burchett v. Myers,* 202 F.2d 920, 926

(9th Cir. 1953)).

The party objecting to discharge has the initial burden of proof to show the debtor failed

to keep records that are material to the understanding of the business and use of the assets.   FED.

R. BANKR. P. 4005; *see also Crocker v. Stiff (In re Stiff)*, 512 B.R. 893, 897 (Bankr. E.D. Ky.

2014) (the information provided by the records must have a material effect on the analysis).   The

records should explain the loss of assets and basis for the liquidation.   Once the objecting party

has satisfied its burden, the burden shifts to the debtor to prove the failure to produce records is

justified.  *Stiff,* 512 B.R. at 897.   Multiple factors are evaluated, including "the complexity and

size of the debtor's business, the debtor's education and sophistication, and the customary

recordkeeping practices in the debtor's type of business."  *Id.* at 899.

## 2.   The United States Trustee Proved Whitaker Failed to Produce Sufficient Records to Explain His Financial Condition.

Whitaker has few records to verify the use of $7.2 million over the course of 28 months

ending May 2017.   The United States Trustee has shown that Whitaker did not maintain basic

business records, including a general ledger, income and expenses for each job, tax returns,

balance sheets, and income statements.   Whitaker argues the bank account information he did

provide takes the place of a general ledger and some of the invoices represented work on

multiple jobs, but nothing he provided allows an understanding of how his business worked and

used $7.2 million in a little over two years.

Whitaker's records of his receipts and disbursements are not complete.   He cannot

connect any of his receipts or disbursements to a specific job.   Also, he has not produced records

that explain the source of at least $2.2 million.  [*See* ECF Nos. 23-7, 24-2, 30-2.]   Further,

5

Whitaker has thus far failed to explain the use of at least $250,000.00 that is the subject of the § 727(a)(5) claim. *Infra* Part III.B.2.

Whitaker alleges that he only needs to explain his business dealings after he first experienced substantial financial problems in the Fall of 2016. [ECF No. 24.] The United States Trustee requested records for the three years preceding his petition. This request includes the last 28 months that he operated his business before he filed bankruptcy. These 28 months are a practical look-back period for a debtor that was only in business four years. *See generally Stiff*, 512 B.R. at 900 (the look-back period is governed by the facts of each case). Also, comparisons to prior periods enhance a financial analysis.

It is reasonable to expect a business that received and used $7.2 million over 28 months to keep more records than those produced by Whitaker. It is also reasonable to presume that a contractor working on multiple jobs would maintain job-related records of receipts and disbursements. Whitaker is right; there is no obligation to tie receipts or disbursements to a specific job. But the absence of such records makes it profoundly more difficult to ascertain his financial condition and business transactions.

The United States Trustee has satisfied the burden to prove Whitaker failed to keep or preserve records that could help ascertain his "financial condition or business transactions."

### 3. Whitaker Will Have the Chance to Provide Additional Information at Trial.

Whitaker asks for additional time to produce information to support his claim that he has records that refute the United States Trustee's arguments. Whitaker asserts he could have answered questions in this proceeding after the criminal actions were finally resolved. Whitaker also claims the United States Trustee did not ask for certain records that are available and he should have the opportunity to present the information at trial.

6

Whitaker further claims he lacked the education to prepare some of these records. [Whitaker First Affidavit ¶¶ 6-10.] It is not enough to claim a lack of education because any person should understand that records are required when $7.2 million is received and used over a 28-month period. He also claims that other contractors do not keep these records. [*Id.* ¶¶ 17-25.] An unsupported statement that other contractors Whitaker knows keep poor records does not excuse his § 727(a)(3) duty to produce enough records to understand his business and transactions.

Therefore, Whitaker had an obligation to produce more information at this stage. But his arguments suggest some disconnect regarding discovery that might support an argument that genuine issues of material fact exist. This is fair in these circumstances. "An action to deny the debtor a discharge is to be construed liberally in favor of the debtor and strictly against the party seeking denial of discharge." *Crocker v. McWhorter (In re McWhorter)*, 557 B.R. 543 (Bankr. E.D. Ky. 2016) (quoting *McDermott v. St. George (In re St. George)*, Case No. 14-16075, Adv. No. 15-1063, 2016 WL 2603367, at *9 (Bankr. N.D. Ohio May 3, 2016)).

Whitaker must understand, however, that "a discharge is a privilege and not a right and should inure only to the honest but unfortunate debtor." *U.S. Tr. v. Varner (In re Varner)*, Case No. 14-61103, Adv. No. 14-6021, 2015 WL 4039390, at *4 (Bankr. N.D. Ohio June 30, 2015). The bank statements and related information are a poor substitute for financial information that is tied to the various construction projects, or at least records that identify the ultimate beneficiary of a cash withdrawal or check.

Whitaker will have the opportunity to produce sufficient records to allow a person to ascertain his financial condition and business transactions.

### B.  11 U.S.C. § 727(a)(5):  Failure to Explain a Loss of Assets.

#### 1.  The Moving Party Must Prove an Explanation of a Loss of Assets Is Necessary.

A court is required to grant a discharge unless "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."  11 U.S.C. § 727(a)(5).  The plaintiff must "identify assets which the debtor at one time owned and claims, in his schedules, to no longer possess."  *Stiff*, 512 B.R. at 900.  The plaintiff also needs to show the missing assets are a material loss.

The goal of § 727(a)(5) is similar to § 727(a)(3) – an explanation is required.  Also, the burden of proof and the shifting obligations are the same.  *Supra* Part III.A.1.  But § 727(a)(5) is more exacting, imposing strict liability when a debtor cannot explain a material loss of assets. *Baker v. Reed (In re Reed)*, 310 B.R. 363, 368 (Bankr. N.D. Ohio 2004).  Judge Lee explained the important distinctions between § 727(a)(3) and (5) in *Stiff*:

> Section 727(a)(5), while serving a similar purpose to § 727(a)(3), differs from § 727(a)(3) in several respects.  First, § 727(a)(5) concerns itself exclusively with the loss of assets, while § 727(a)(3) is not limited to records documenting the disposition of lost assets. Second, to prevail on a § 727(a)(5) action, a debtor must offer a satisfactory explanation of a loss of assets, whereas in a § 727(a)(3) action a debtor may prevail by showing only that his failure to keep or preserve records documenting the disposition of lost assets was reasonable. Third, a debtor can defeat a § 727(a)(5) action by offering persuasive testimonial explanations of his loss of assets, *see Buzzelli,* 246 B.R. at 117, *Losinski,* 80 B.R. at 470, while a testimonial explanation of lost assets will not defeat a § 727(a)(3) action absent a reasonable explanation of the absence of records of same.

*Stiff,* 512 B.R. at 900.

8

**2.   The United States Trustee Proved There Was a Material Loss of Assets, But Whitaker Will Have a Chance to Provide Additional Information at Trial.**

The United States Trustee focuses on the unexplained use of approximately $415,000.00 for purposes of summary judgment.  Whitaker and the United States Trustee agree he withdrew approximately $170,000.00 from his accounts and wrote checks to Cowboys for $250,000.00 during the 28-month period under review.  These amounts are material because they represent almost 20% of the scheduled liabilities and 22% of the total proofs of claim.  Whitaker argues the proofs of claim are overstated, but that works against him because the percentage of unexplained disbursements only grows larger.

Whitaker provided some proof that approximately $21,000.00 in checks written to Cowboys were for fuel based on the amount and timing of the expense.  [ECF No. 23-9 at 30] He also argues $24,000.00 of the cash withdrawals were from ATMs while traveling out-of-town and $25,000.00 was payment of his own wages.  [ECF No. 23-6 at 1 and 3; *see also* Whitaker Second Affidavit ¶ 80 (regarding the cash withdrawals).]  Whitaker also believes the time cards he produced prove he used at least $100,000.00 of the remaining unexplained cash withdrawals to pay his subcontractors.  [ECF No. 24-7.]

These explanations might not survive cross examination, or, they could reduce the amount of unexplained withdrawals from approximately $415,000.00 to $250,000.00. The reduced total would still provide a meaningful recovery, so it remains a material loss that requires explanation.  But Whitaker's information suggests there are genuine issues of material fact regarding Whitaker's attempt to address his burden to explain the loss of material assets.

Therefore, Whitaker may present his defenses at trial.

9

IV.    CONCLUSION.

The United States Trustee has satisfied the burden under § 727(a)(3) to prove Whitaker

has not produced records that would explain his financial condition and business transactions.

The United States Trustee has also satisfied the burden under § 727(a)(5) to prove that Whitaker

has provided insufficient explanations for lost assets that could have helped meet his liabilities.

Therefore, Whitaker's request for summary judgment [ECF No. 16] is DENIED because the

United States Trustee has made a prima facie case under § 727(a)(3) and (5) and shifted the

burden to him at trial.

Whitaker has provided enough information to suggest genuine issues of material fact may

exist.  Therefore, summary judgment in favor of the United States Trustee is DENIED.  But the

burden of proof has shifted to Whitaker to produce more information to avoid denial of his

discharge.

10

The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and
electronically entered by the Clerk in the official record of this case.



Signed By:
*Gregory R. Schaaf*
**Bankruptcy Judge**
**Dated: Thursday, June 27, 2019**
**(grs)**