**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
FRANKFORT DIVISION**

| | |
|---|---|
| IN RE | |
| JASON WHITAKER<br>DEBTOR | CASE NO. 18-30073 |
| PAUL A. RANDOLPH, UNITED STATES TRUSTEE | PLAINTIFF |
| v. | ADV. NO. 19-03002 |
| JASON WHITAKER | DEFENDANT |

**MEMORANDUM OPINION**

The United States Trustee seeks denial of Defendant Debtor Jason Whitaker's chapter 7 discharge pursuant to 11 U.S.C. § 727(a)(3) and § 727(a)(5).[1] The record confirms that Whitaker is not entitled to a discharge.

**I.    RELEVANT FACTS AND PROCEDURAL HISTORY.**

**A.    General Background.**

Whitaker filed for chapter 7 relief on February 27, 2018. [Bankr. ECF No. 1.] He scheduled $218,986.12 in assets and $2,323,916.53 in liabilities. [*Id*.] His descent into bankruptcy took several years, but his abysmal business practices made it inevitable. It also led to felony criminal fraud charges and agreed judgments involving mandatory restitution. [Adv. ECF No. 153.]

Whitaker has a high school education. He initially farmed and worked on an assembly line before starting a local concrete business in 2003. In 2013, Whitaker moved away from

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

1

concrete work and expanded into the residential construction business. He operated as Jason Whitaker Concrete and Construction.

His residential construction business focused on homes in and around Henry County, Kentucky, priced in the range of $200,000.00 to $250,000.00. Whitaker's business expanded rapidly beginning in 2015. He built only two or three houses in 2014, constructed eight houses in 2015, and worked on approximately 15 houses in 2016-17. Whitaker still took on some concrete work in- and out-of-state during this time.

Whitaker operated his business as a sole proprietorship. Whitaker initially did much of the work himself. Eventually, he relied almost exclusively on subcontractors and independent contractors. Whitaker traveled between jobsites to oversee the work and also performed management duties.

### B. Use of Funds.

Whitaker's operations evolved as the business grew, but some habits stayed the same. Whitaker hired construction workers on a daily or weekly basis, paying them in cash or with checks. Whitaker also used a regular group of subcontractors. But he was forced to use different, less reliable subcontractors in the last year of operations because the regular ones had other jobs or refused to work for him based on his financial problems.

Whitaker started each workday at a convenience store called Cowboys. He purchased gas for his vehicle and sometimes food and drink. Whitaker testified that he also paid for his workers' gas, although he did not have specific records to verify the dates, workers, or number of vehicles involved.

Whitaker paid for materials with credit cards, checks and cash, and paid subcontractors and workers with cash and checks. He started paying most of his expenses with cash as his

financial problems worsened. He cashed checks at Cowboys and also withdrew large sums from his bank accounts using checks made payable to himself or by withdrawals from ATMs.

Whitaker testified that he used ATMs to withdraw funds when he was out-of-town on a project to pay for materials and local contractors. He would also give the workers that accompanied him cash to pay for hotels because they did not have credit cards and he did not want to give them access to his cards.

Whitaker made some attempts to gain control of management of his business in mid-2016. He hired a part-time assistant to help him manage the operations. He also took out a line of credit to purchase an office building and began using timecards in August 2016. But the building burned and the timecards were sloppy and incomplete.

His lack of management skills was not the only reason his expenses were out of control. Whitaker engaged in an extra-marital affair beginning in May 2016. He testified that he gave over $50,000.00 in gifts to his girlfriend via Western Union and MoneyGram. His wife, who was paying all living expenses because Whitaker had stopped drawing a salary, ceased contributing when she discovered the affair in November 2016. She also filed for divorce.

**C.**     **Sources of Revenue.**

Whitaker typically bid a flat fee for his construction projects. He estimated labor and materials and then added a profit component of $5,000.00 to $15,000.00. Whitaker's lack of experience often resulted in cost estimates that were understated. Overages came out of his profit, and if they were too great, he incurred a loss.

Whitaker's customers paid cash up front and as work progressed. Many customers took out construction loans that Whitaker would draw on as work was completed. Whitaker testified that the lending banks would rarely allow a draw for the full amount of the expenses incurred.

Also, he often had to redo work performed by unreliable subcontractors at his own cost. These and other factors forced Whitaker to find other means to pay his ongoing expenses.

Whitaker borrowed from his parents and started taking out short term, high interest loans from acquaintances. He borrowed amounts ranging from $40,000.00 to $80,000.00 at interest rates as high as 10% per week. Whitaker also bounced checks and his bank accounts were often overdrawn. The records show Whitaker attempted to avoid bouncing checks by moving money between bank accounts or cashing a check at Cowboys and depositing the cash before a different check would overdraw an account.

### D.    Lack of Recordkeeping, Exhibits, and Trial.

Whitaker did not keep contemporaneous records to support his revenues, expenses, or use of cash withdrawals. Rather, his business records consist of monthly bank statements, returned checks, credit card statements, purchase invoices, customer contracts and estimates, and other miscellaneous receipts. This information is an incomplete jumble of papers kept in a haphazard and disorganized manner. With the exception of a few files, most are not tied to any particular job or contract. Whitaker did not prepare any usual business financial statements, such as general ledgers, balance sheets, or income statements, or allocate costs to specific jobs.

The Plaintiff spent a significant amount of time trying to get information from Whitaker before and after this adversary proceeding was filed. Whitaker refused to answer any questions by the Plaintiff until April 2019 when he pled guilty to all criminal cases and agreed to pay restitution. [Bankr. ECF No. 57, 73, 91, 93; *see also* Adv. ECF No. 153.] Even without his cooperation, the Plaintiff prevailed on summary judgment. The Plaintiff

> satisfied the burden under § 727(a)(3) to prove Whitaker has not produced records that would explain his financial condition and business transactions. The United States Trustee has also satisfied the burden under § 727(a)(5) to prove that

4

Whitaker has provided insufficient explanations for lost assets that could have helped meet his liabilities.

[Adv ECF No. 39 at 10.]  Therefore, the burden of proof "shifted to Whitaker to produce more information to avoid denial of his discharge." [*Id.*]

Whitaker had ample time to prepare for trial but still stretched his requests for continuances to the breaking point.  The numerous extensions are described in Orders entered on October 18 and November 22, 2019.  [Adv. ECF Nos. 72 and 119.]  Despite more than sufficient time to prepare his responsive exhibits, the trial was rescheduled to January 6, 2020, and Whitaker was given until December 16, 2019, to file summaries that he promised would make the multiple exhibits easier to understand.

Whitaker did not live up to his promises.  He filed many summary exhibits late and did not provide a promised exhibit list that would have made the trial much easier.  Whitaker used the same arguments to defend his delayed filings, but his continued excuses failed to justify his blatant refusal to comply with reasonable deadlines.  Ultimately, the late exhibits were struck by Order entered January 6, 2020.  [Adv. ECF No. 165.]

The trial finally began on January 6 and continued for three and a half days.  [Adv. ECF Nos. 161-164, 166-172.]  Whitaker testified for more than two days about his financial circumstances and introduced his multiple, disjointed exhibits.  The Plaintiff cross-examined Whitaker and introduced the testimony of John Todd Wright, an auditor for the United States Trustee's office.

After the trial, Whitaker filed a post-trial brief and the Plaintiff responded.  [Adv. ECF No. 173-75.]  The matter was then taken under submission.

## II. JURISDICTION.

Jurisdiction over this adversary proceeding is proper. 28 U.S.C. § 1334(b). Venue is appropriate in this District. 28 U.S.C. § 1409. This matter is a core proceeding. 28 U.S.C. § 157(b)(2)(J).

## III. ANALYSIS.

### A. Whitaker Did Not Keep or Preserve Information that Shows His Financial Condition or Business Transactions. [11 U.S.C. § 727(a)(3).]

#### 1. Whitaker's Exhibits and Testimony Do Not Provide an Understanding of Whitaker's Financial Condition or Business Practices.

Section 727(a)(3) requires a discharge unless "the debtor… failed to keep or preserve any recorded information…from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3); *see also Crocker v. Stiff (In re Stiff)*, 512 B.R. 893, 897 (Bankr. E.D. Ky. 2014) (education, complexity, size, and customary practices are considered). Any person conducting operations of similar size and complexity as Whitaker's business should understand the need for reasonable record keeping. [Adv. ECF No. 39.] *See also United States Trustee v. Kandel (In re Kandel)*, Case No. 11-62597, Adv. No. 12-6003, 2015 WL 1207014, at *10 (Bankr. N.D. Ohio Mar. 13, 2015) (a trucking company with four million in annual revenues required "records above that required of a normal consumer debtor."). Records are even more important when a business is conducted primarily in cash.

The Plaintiff had the initial burden of proof, which shifted to Whitaker because he had not produced sufficient information to allow an understanding of his financial condition at the

6

end of the initial discovery period. [Adv. ECF No. 39.] Whitaker's response was very close to, if not, a document dump.

Whitaker provided almost 9,000 pages of haphazardly presented documents. [Adv. ECF Nos. 16, 23-24, 30, 46-52, 58-59, 74-88, 91-103, 107-108, 120-127, 129-143, 148, 150-52, and 160.] The documentary evidence did not paint a complete or accurate picture of Whitaker's financial condition or business transactions. The documents were disorganized and Whitaker's numbering system is not easy to understand. Many documents are repetitive, particularly the early summaries which merely restructure the Plaintiff's summary judgment proof. [*Compare* Adv. No. 160-1, Def. Exh. 96-a ("U.S. Trustee's 'Unexplained Cash Transaction' By Month for the Period 02/01/2015 – 12/31/2015"), to Adv. No. 128-1, Plf. Exh. 1 ("Summary of Cash Transactions – no explanation in records – For the Period February 2015 – May 2017").] Later summaries were struck because they were filed late.

It is a debtor's duty to maintain and produce organized records of his financial dealings; it is not the responsibility of his creditors (or the Plaintiff or this Court) to reconstruct those business records after the fact. *See Union Planters Bank, N.A. v. Connors*, 283 F.3d 896, 899 (7th Cir. 2002); *see also Stathopoulos v. Bostrom (In re Bostrom)*, 286 B.R. 352, 365-66 (Bankr. N.D. Ill. 2002) (a court is not required to make the debtor's case for him). Whitaker was told multiple times before trial that his exhibits were not enough. He had to show how the documents fit together to explain his financial condition. [*See, e.g.*, Adv. ECF No. 165.]

Three days of testimony did not clarify the inconsistencies in the record. Whitaker's testimony was disjointed and inadequate. Contrary to Whitaker's promises that supported his requests for extensions, Whitaker's explanations were rarely tied to, or supported by, an exhibit.

At the close of testimony, the parties were no closer to understanding Whitaker's financial condition or business transactions.

### 2. Whitaker's Testimony Was Not Reliable.

Whitaker initially came across as credible when he provided testimony. It is not hard to believe he lost a significant amount of cash. He frequently underbid his projects and did not account for increased business expenses. He also took out short term loans with extremely high interest rates. But missing and erroneous information hampered Whitaker's effort to prove sources and uses of funds. Overall, Whitaker's testimony does not withstand close scrutiny.

Whitaker's testimony is based on a re-creation of his finances from memory after reviewing thousands of pages of unorganized documents. His testimony was general, vague, and often scattered. Whitaker has not filed tax returns since 2016 and testified that the filed returns are unreliable. Whitaker rarely linked distinct cash transactions to specific business expenses, except for the payments made to his girlfriend. Such vague and indefinite explanations, uncorroborated by documentation, is not sufficient under § 727(a)(3). *United States of America v. Trogdon (In re Trogdon)*, 111 B.R. 655, 659 (Bankr. N.D. Ohio 1990) (quoting *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 619 (11th Cir. 1984)); *Structured Asset Servs., LLC v. Self (In re Self)*, 325 B.R. 224, 252 (Bankr. N.D. Ill. 2005). The testimony is not reliable or helpful.

### 3. Whitaker's Post-trial Brief Does Not Support His Case.

The presentation of evidence left the Court unable to connect Whitaker's scattered testimony to the exhibits or to recreate his financial picture. Forty minutes of closing argument from Whitaker also did not tie anything together. [Adv. ECF No. 172.] But an action to deny a debtor a discharge is to be construed liberally. *Crocker v. McWhorter (In re McWhorter)*, 557

B.R. 543, 551 (Bankr. E.D. Ky. 2016).  So after an expanded discussion of the problems with Whitaker's production of evidence, he was offered, and accepted, a final opportunity to explain his financial circumstances and avoid a denial of discharge.  [Adv. ECF No. 172 and 173.]

Whitaker agreed to file a post-trial brief that would reconcile his cash transactions for December 2016 and January 2017 to connect the source documents to his testimony introduced at trial.[2]  [Adv. ECF No. 173.]  A reasonable explanation of the sources and uses of funds for these months would show the parties how to use the documents to determine Whitaker's financial condition and business transactions.

Whitaker did not follow instructions and the post-trial brief is not helpful in any way.  [Adv. ECF No. 174.]  Whitaker made new arguments and attempted to introduce new exhibits in direct violation of specific instructions.  [Adv. ECF No. 172 at 1:09:40.]  The post-trial brief does not specifically address December 2016 or January 2017 transactions or attempt to link Whitaker's testimony to the relevant exhibits.  Further, the Court's attempt to do the same reconciliation for May 2016 resulted in an incomplete picture and large, unaccounted for cash deposits.  *See infra* at Part III.B.3.

Whitaker did not satisfy his burden under § 727(a)(3) to provide documents that allow an understanding of his financial condition or business transactions.

---

[2] These months were selected because there were enough significant transactions to back up Whitaker's claim that the exhibits showed his financial position.

**B.     Whitaker Did Not Satisfactorily Explain His Loss of Assets. [11 U.S.C. § 727(a)(5).]**

**1.     Whitaker's Incomplete Testimony Does Not Explain Use of Cash Assets.**

Section 727(a)(5) requires a discharge unless "the debtor has failed to explain satisfactorily… any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). To prevail under § 727(a)(5), the United States Trustee must prove by a preponderance of the evidence a material loss of assets for which there is no satisfactory explanation. *Stiff*, 512 B.R. at 900. While the goals of § 727(a)(3) and § 727(a)(5) are similar, § 727(a)(5) imposes strict liability if a debtor cannot explain a material loss of assets. *Baker v. Reed (In re Reed)*, 310 B.R. 363, 368 (Bankr. N.D. Ohio 2004).

The Plaintiff again had the initial burden of proof, which shifted to Whitaker because he had not produced sufficient information to explain the disposition of a material amount of cash. [Adv. ECF No. 39.] The Plaintiff specifically identified the following transactions:

- $170,000 in cash withdrawals;
- $250,000 in checks written to Cowboys; and
- $54,000 in MoneyGram and Western Union transactions.

[*Id.*] The Plaintiff agreed for summary judgment purposes that Whitaker's evidence might explain approximately $200,000.00, leaving $250,000.00 still in question. [*Id.*]

The MoneyGram and Western Union transactions were gifts to Whitaker's girlfriend, so that use of cash is sufficiently explained. Otherwise, the same faults with the exhibits and testimony force a conclusion that Whitaker has not explained a material portion of his assets.

For example, Whitaker testified that some ATM withdrawals were used to pay business expenses while working out of town. But he did not tie any of the ATM transactions to specific

business expenses for particular out-of-state jobs. There is only his testimony that the cash was used for business expenses and it was too disjointed and unreliable. *See supra* at Part III.A.2.

Whitaker's receipts, bank records, and cancelled checks show checks payable to Cowboys or Whitaker for cash, but there is no clear record of how that cash was spent. Whitaker testified that receipts from Cowboys for less than $100.00, or for odd amounts, reflect cash spent on food, fuel, or other supplies. Checks or withdrawals in larger, even amounts, such as $200.00 or $300.00, were allegedly for cash to pay for labor and supplies. Whitaker also claimed that some of the cash was used to pay the principal and interest on loans.

Whitaker did not, however, use his testimony to link the explanations to specific transactions. The receipts do not indicate whether the expenses were business or personal. Much of the information is illegible and the invoices and receipts on file do not necessarily reflect a purpose or that the payment was actually made in cash.

The timecards are incomplete and only document work performed after August 2016. Sometimes they indicated a disbursement, but not whether payment was by cash or by check. Whitaker tried to describe his use of the timecards, but his general, non-specific explanations are of little use.

The documents and testimony provide some information, but they are insufficient to explain the number and amount of transactions that would support use of over $7.2 million in a 28-month period. [*See* Adv. ECF No. 39.]

### 2. The Post-Trial Briefing Highlights Additional Problems.

Whitaker's post-trial brief did not help with his § 727(a)(3) defense and is similarly ineffective when analyzing § 727(a)(5). The Plaintiff's post-trial brief identifies several additional problems. [Adv. ECF No. 175.] Whitaker's receipts and timecards only support

11

approximately $16,000.00 to $17,000.00 in expenses in December 2016, leaving over $40,000.00 in unexplained cash use. [Adv. ECF No. 88-2, Def. Exh. 71-1 (miscellaneous receipts); Adv. ECF No. 142-1, Def. Exh. 92 (K-1 lumber invoice); Adv. ECF No. 103-1, Def. Exh. 46-a (timecards).] Further, Whitaker's documents can only explain approximately $31,000.00 in expenditures in January 2017, which leaves almost $74,000.00 in unaccounted for cash. [Adv. ECF No. 88-2, Def. Exh. 71-m (miscellaneous receipts); Adv. ECF No. 102-6, Def. Exh. 45-b (time cards).] This is a material amount of unexplained cash.

### 3. The Court's Independent Investigation Highlighted Missing and Unexplained Assets.

The Court conducted its own independent examination of Whitaker's records post-trial to give him every chance at a discharge. The Court examined the records related to May 2016 to try to reconcile the exhibits and testimony.[3] The results amplified the prior conclusions regarding Whitaker's missing and unexplained loss of assets.

In May 2016, Whitaker made purchases from, or wrote checks to, Cowboys totaling $1,633.01. [Adv. ECF No. 128-3, Plf. Exh. 3.] But when receipts are compared to expenditures, there is still $1,050.00 in unexplained cash. [Adv. ECF No. 160-1, Def. Exh. 96-d.] Whitaker also has not maintained or produced any documents to explain approximately $15,000.00 in cash withdrawn from his bank accounts during May 2016. [Adv. ECF No. 160-1, Def. Exh. 96-c.] All of these amounts derive from money Whitaker obtained by cashing checks from the business made out to himself. [Adv. ECF No. 128-1.]

---

[3] This month was selected because there were enough significant transactions and it was the focus of some of Whitaker's testimony.

The May 2016 review revealed seemingly random movements of money. The investigation also identified a loan from Rob Jones on May 4, 2016, for $75,000.00. [*See* Adv. ECF No. 108-35, Def. Exh. 74-ff-ii (Jones Proof of Claim No. 29)).]. Whitaker did not address this loan in his testimony, and it does not show as a deposit in any of his bank accounts. The lack of testimony or summary information makes it impossible to understand Whitaker's random transfers between accounts and to confirm that Whitaker has accounted for a material loss of assets.

These problems show in just one month in a 28-month review period. Further, Whitaker's inability or refusal to reconcile his receipts and disbursements in December 2016 or January 2017 show these months were unreconcilable from the records or had similar problems Whitaker did not want to disclose. Whitaker must suffer the consequences of his own poor record keeping and inability to recreate a picture of his business dealings and use of assets.

Whitaker has not satisfactorily explained a loss of material assets, so he is not entitled to a discharge under § 727(a)(5).

**IV.    CONCLUSION.**

Based on the foregoing, it is ORDERED that Whitaker is not entitled to a chapter 7 discharge pursuant to 11 U.S.C. § 727(a)(3) and § 727(a)(5) and judgment will enter for the Plaintiff on both counts of the Complaint.

In reaching the conclusions found herein, the Court has considered all of the evidence, admitted exhibits, briefs and arguments of counsel, regardless of whether or not they are specifically referred to in this decision. A separate Judgment shall be entered accordingly.

13

_____
**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Gregory R. Schaaf*
**Bankruptcy Judge**
**Dated: Tuesday, March 10, 2020**
**(grs)**